## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| LALAUNA SANDAGE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 14-CV-2013-JAR |
| WAL-MART STORES, INC., | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

This is a negligence action involving a "slip and fall" by Plaintiff Lalauna Sandage at a store owned and operated by Defendant Wal-Mart Stores, Inc. Before the Court is Defendant's Motion for Summary Judgment (Doc. 19). The motion is fully briefed and the Court is prepared to rule. For the reasons stated in detail below, the Court denies Defendant's motion.

### I.    Background

The facts of this case are largely uncontroverted; to the extent they are, the Court views them in the light most favorable to Plaintiff. On June 13, 2012, Plaintiff was shopping at a Wal-Mart store in Hays, Kansas. She entered a certain aisle at about 7:22 p.m. After shopping in that aisle for a few minutes, Plaintiff slipped and fell.

A Wal-Mart surveillance camera captured the incident on video. The video shows Plaintiff entering an aisle with display shelves on each side—one row of shelves lining the right side of the aisle, another row of shelves lining the left. A plastic bin sat on the floor against the left row of shelves. Plaintiff parked her shopping cart in the center of the aisle near this plastic

bin and began looking at items displayed on the row of shelves to the right.  As Plaintiff moved forward to select an item from one of those shelves, she stepped into a small puddle of water. Noticing the puddle, she took a step backward and looked up to determine whether water was dripping from the ceiling.

Plaintiff did not notify a Wal-Mart employee of the puddle; instead, she continued shopping along the row of shelves lining the right side of the aisle, stepping in the same puddle several times as she did so.  Plaintiff never looked at the shelves on the left side of the aisle, but focused exclusively on the row of shelves to the right.  After proceeding in this manner for about one minute, Plaintiff stepped backward to gain a better view of the items on the shelves to the right.  She then turned and crossed for the first time between her shopping cart, which was still situated in the center of the aisle, and the plastic bin laying beside the row of shelves on the left. She slipped and fell to the ground as she passed by the plastic bin, sustaining injuries to her back, neck, and head.

Plaintiff admits that prior to her fall she was aware of the small puddle on the right side of the aisle.  She declares in an affidavit, however, that a separate, previously undetected puddle sat on the left side of the aisle next to the plastic bin, and that it was this second puddle that caused her to fall.  Though Plaintiff does not know the precise size of the second puddle, it was large enough that her "clothes were soaked by the time [she] got to the hospital."[1]  She also states that the second puddle was difficult to see because of the glossy finish of Wal-Mart's white tile floor and because the plastic bin hid the puddle from her view.  Defendant asserts, to the contrary, that the danger posed by the water was open and obvious, and that Defendant was

---

[1]Doc. 20-2 at 2.

therefore under no legal duty to protect Plaintiff from the hazard that caused her injuries.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[6]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[7]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[8]  The burden may be met by showing that there is no evidence to support

---

[2]Fed. R. Civ. P. 56(a).

[3]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

the nonmoving party's case.[9]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]

To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[12]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## III.   Discussion

Plaintiff claims that Defendant maintained its premises in an unsafe condition and failed

---

[9]*Id.*

[10]*Id.*

[11]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[12]Fed. R. Civ. P. 56(c)(4).

[13]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[15]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

to warn her of and protect her from the puddle of water on which she slipped.  Defendant responds that because the water sitting on the aisle floor was an open and obvious danger, Defendant owed Plaintiff no duty to protect her from the hazard that caused her to fall.

The parties agree that Kansas law governs this case.  To establish negligence under Kansas law, a plaintiff must show that the defendant breached a duty of care owed to the plaintiff, that the plaintiff was injured, and that a causal connection existed between the duty breached and the injury sustained.[16]  The presence or absence of negligence is normally a question of fact for a jury to determine.[17]  The court, however, may resolve the issue by summary judgment where the facts of the case will support only one conclusion and reasonable minds cannot differ as to that conclusion. [18]  In addition, the threshold issue of the existence of a legal duty is generally a question of law to be decided by the court.[19]

The record in this case establishes that Plaintiff, a Wal-Mart customer, was a business invitee of Defendant at the time of her fall.[20]  Under Kansas law, the duty owed by the owner of a business to a business invitee is to exercise reasonable care to keep the premises safe and to warn an invitee of dangers of which the owner knows or should know by exercising reasonable

---

[16]*Honeycutt v. City of Wichita*, 836 P.2d 1128, 1136 (Kan. 1992).

[17]*See Lay v. Kansas Dep't of Transp.*, 928 P.2d 920, 924 (Kan. Ct. App. 1996) (citing *St. Clair v. Denny*, 781 P.2d 1043, 1045 (Kan. 1989)).

[18]*Id.* (citing *Baker v. City of Garden City*, 731 P.2d 278, 280 (Kan. 1987)).

[19]*McGee v. Chalfant*, 806 P.2d 980, 983 (Kan. 1991).

[20]*See Gerchberg v. Loney*, 576 P.2d 593, 596 (Kan. 1978) ("An invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee."), *overruled on other grounds by Bowers v. Ottenad*, 729 P.2d 1103, 1114 (Kan. 1986); *see also Smith v. Locke Supply Co.*, No. 98-2495-JWL, 1999 WL 1423070, at *2 (D. Kan. Dec. 21, 1999) (holding that a plaintiff who tripped and fell while shopping at the defendant's store was a business invitee of the defendant).

diligence.[21]  The owner of a business is not an insurer against all accidents.[22]  But the proprietor

of a store "does owe to customers who enter the premises, while the establishment is open for

business, the duty of exercising ordinary care to keep the aisles, passageways and such other

parts of the premises as are ordinarily used by customers in transacting business in a reasonably

safe condition for use by the persons thus entering."[23]

Here, because Plaintiff was a business invitee, Defendant owed her a duty to keep its

aisle floors in reasonably safe condition.  Defendant concedes this much.  Defendant points out,

however, that there is no duty to protect customers from dangers that are readily apparent and

observable.[24]  Indeed, Kansas courts follow the rule set forth in § 343A of the Restatement

(Second) of Torts, providing that "[a] possessor of land is not liable to his invitee for physical

harm caused to them by any activity or condition on the land whose danger is known or obvious

to them, unless the possessor should anticipate the harm despite such knowledge or

obviousness."[25]  Though the presence or absence of a legal duty is generally a question of law,

the question of "knowledge or obviousness" is a question of fact which normally must be

---

[21]*See Sewell v. Wal-Mart Inc.*, No. 91-4053-S, 1992 WL 198874, at *3 (D. Kan. Aug. 5, 1992).

[22]*See id.*

[23]*Thompson v. Beard & Gabelman*, 216 P.2d 798, 800 (Kan. 1950).

[24]*See Smith*, 1999 WL 1423070, at *4.

[25]*Scales v. St. Louis-San Francisco Ry. Co.*, 582 P.2d 300, 306 (Kan. 1978) (quoting Restatement (Second) of Torts § 343A(1)); *see also* Restatement (Second) of Torts § 343A(1) cmt. b ("The word 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. . . . 'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.").

determined by a jury.[26]  The issue before the Court in this case, therefore, is whether a reasonable trier of fact could find that the water which caused Plaintiff's fall did not constitute a known or obvious danger.[27]

Defendant argues that because Plaintiff knew about the presence of water on the aisle floor prior to her fall, the danger that caused her injuries was "known or obvious" as a matter of law.  The Court disagrees.  To be sure, Plaintiff admits that she knew about the puddle of water sitting on the floor near the shelves lining the right side of the aisle.  But she does not claim *that* puddle caused her fall.  Instead, Plaintiff claims she slipped and fell on a second, previously unnoticed puddle that had collected near the row of shelves on the left side of the aisle.  The evidence, viewed in the light most favorable to Plaintiff, corroborates this version of events.  Though Defendant's surveillance video lacks the display resolution necessary to determine the existence or location of the alleged puddles, the video clearly shows Plaintiff examining a substance on the floor on the right side of the aisle, then later slipping and falling as she stepped in a completely different spot on the aisle's left side.  Plaintiff had not walked near this latter spot prior to her fall.  In addition, a recorded interview administered two days after the incident

---

[26]*See, e.g.*, *Wagoner v. Dollar Gen. Corp.*, 955 F. Supp. 2d 1220, 1228 (D. Kan. 2013) (applying Kansas law and denying a motion for summary judgment because a factual dispute existed as to whether a condition was open and obvious); *Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263-JWL, 2008 WL 2622895, at *10 (D. Kan. June 30, 2008) ("Whether the conditions were open and obvious is for the jury to determine.") (citing *Bell v. Andler Corp.*, No. 90-4094-R, 1992 WL 331282, at *1 (D. Kan. 1982)); *accord Zinn v. Gichner Sys. Grp.*, 880 F. Supp. 311, 316 (M.D. Pa. 1995) (applying Pennsylvania law); *Pullia v. Builders Square, Inc.*, 638 N.E.2d 688, 693–94 (Ill. App. Ct. 1994).

[27]The Court notes that defendants generally have a duty to warn business invitees of dangerous floor conditions only if defendants have actual or constructive notice of the dangerous conditions.  *See Smith*, 1999 WL 1423070, at *3 (citing *Sewell v. Wal-Mart Stores, Inc.*, No. 91-4053-S, 1992 WL 198874 (D. Kan. Aug. 5, 1992); *Carter v. Food Center, Inc.*, 485 P.2d 306, 309 (Kan. 1971)).  In this case, however, Defendant does not raise lack of actual or constructive notice as a basis for its motion for summary judgment.  The Court, therefore, will not address the issue of Defendant's notice as to the condition which caused Plaintiff's fall.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

tends to support the declaration in Plaintiff's affidavit that a separate puddle of water contributed to the accident: Plaintiff stated in that interview that she landed in a puddle that "was big enough that . . . [her] clothes were soaked by the time [she] got to the hospital."[28]

The record also contains facts supporting Plaintiff's contention that the second puddle was not readily apparent.  Defendant's surveillance video suggests that the store's tile floor was, in fact, glossy and white, which might have made a puddle of water difficult for Plaintiff to notice unless she stepped in that puddle first.[29]  The plastic bin sitting on the aisle floor could have further obstructed Plaintiff's view of the second puddle, as she had to step around the bin to reach the spot where she eventually fell.  Moreover, as Plaintiff shopped, she focused her attention on the display shelves rather than on the aisle floor.  A rational jury could find that she was reasonable to do so: a grocery store customer "would necessarily be required to pay close attention to the shelves and would not ordinarily be expected to watch the floor and each step taken."[30]

Defendant contends that even if there was a second puddle of water on the aisle floor, the second puddle was open and obvious because Plaintiff was aware of spilled water in the "general area" prior to her fall.  Defendant cites no authority for this general-area theory.  And under the circumstances presented here, the Court finds that the question of obviousness is one for the jury.  Reasonable minds can differ as to whether the alleged second puddle should have been apparent

---

[28]Doc. 20-2 at 2.

[29]*See Villareal v. Wal-Mart Stores, Inc.*, No. CIV-06-193-C, 2007 WL 14573, at *3 (W.D. Okla. Jan. 3, 2007) (finding that a puddle of clear liquid on a white tile floor could not be deemed open and obvious as a matter of law).

[30]*Warren v. T.G. & Y. Stores Co.*, 499 P.2d 201, 203 (Kan. 1972).

8

to Plaintiff after she encountered the first puddle.  The surveillance video shows that at the time Plaintiff noticed the first puddle, the second puddle would have been outside of her scope of vision, as the spot where she eventually slipped and fell was located behind her and to her right. Plaintiff's reaction to the first puddle, in fact, was to look up toward the ceiling rather than to her right or left, suggesting that the only water she could see was confined to a small area directly in front of her.  The facts of the case do not disclose any reason for Plaintiff to have suspected that water might be standing in more than one spot in her vicinity.  Absent circumstances suggesting that multiple puddles were especially likely to be present at the time of the incident,[31] the Court cannot conclude as a matter of law that Plaintiff's knowledge of the first puddle should have placed her on notice of all other puddles that might have accumulated elsewhere in the aisle.

Defendant, finally, argues that this case is similar to *Smith v. Locke Supply Co.*,[32] which granted summary judgment in favor of a defendant-supply store.  *Smith* involved a plaintiff who tripped and fell after using one of the store's telephones.[33]  The plaintiff alleged that after he hung up the telephone, he turned around, took half a step, and tripped over a box that someone had placed directly behind him.[34]  Store employees disputed this version of events, asserting that the plaintiff had tripped over his own feet and that no boxes were nearby at the time he fell.[35]

---

[31]*Cf., e.g.*, *Hagin v. Winn-Dixie Stores, Inc.*, 348 S.E.2d 766, 767 (Ga. Ct. App. 1986) (affirming summary judgment in favor of a grocery store where the plaintiff, on a rainy day, slipped and fell on a puddle of water just inside the grocery store's entranceway: "when it rains, the ordinary person is aware that water is apt to be found in any area frequented by people coming in from the rain outside").

[32]*Smith v. Locke Supply Co.*, No. 98-2495-JWL, 1999 WL 1423070 (D. Kan. Dec. 21, 1999).

[33]*Id.* at *1.

[34]*Id.*

[35]*Id.*

9

The court noted that the plaintiff did not claim ever to have seen the box that tripped him; instead, he simply stated that he "must have" tripped over a box that someone had placed in his way.[36]  The court thus granted summary judgment for the defendant, holding that the plaintiff failed to present concrete facts in support of his claim that he had tripped over a box.[37]  The only evidence that the store contained boxes at all, in fact, was the plaintiff's assertion that he had noticed some boxes stacked near the defendant's Pepsi machine.  But to the extent the plaintiff argued that *those* boxes had tripped him, the court found, the danger posed by those boxes was open and obvious: the plaintiff admitted that he was aware of the boxes stacked near the Pepsi machine prior to his fall.[38]

The case now before the Court differs from *Smith* in at least two material respects.  First, unlike the record in *Smith*, the record here contains concrete, admissible evidence that the hazard Plaintiff claims to have slipped on actually existed.  Plaintiff declares in her affidavit that she fell after stepping in a puddle of water sitting on the left side of the aisle floor.[39]  That assertion is consistent with a recorded statement Plaintiff gave two days after the incident, which indicates that she slipped and fell in a puddle that soaked her clothes.[40]  And Defendant's surveillance video shows that after Plaintiff had been helped off the floor, Wal-Mart employees spent at least one minute using paper towels to clean up the spot where Plaintiff had slipped and fallen.[41]

---

[36]*Id.* at *3.

[37]*Id.*

[38]*Id.* at *4.

[39]Doc. 26 ¶ 12.

[40]Doc. 20-2 at 2.

[41]Def. Ex. C at 7:27:51–7:29:00.

These facts go beyond "mere conjecture or speculation,"[42] and could convince a rational jury that Plaintiff did, in fact, slip on a puddle of water as she claims.  Second, the water Plaintiff slipped on in this case is unlike the boxes that the *Smith* court found to be open and obvious dangers.  In *Smith*, the court assumed for the sake of argument that the plaintiff had tripped over some boxes stacked near the defendant's Pepsi machine, since those were the only boxes whose existence was supported by the record; the court found that those boxes were open and obvious because the plaintiff admitted that he was aware of them before he fell.[43]  Here, by contrast, Plaintiff claims that she was unaware of the puddle that caused her fall.  A reasonable jury could so find: as already explained, Plaintiff's knowledge of the puddle she initially stepped in did not necessarily place her on notice that other puddles were present in the same aisle.

On the facts of this case, a reasonable jury could find that although the first puddle Plaintiff encountered was open and obvious, the puddle that she actually slipped on was not. Accordingly, the Court finds a genuine issue of material fact as to whether the condition that caused Plaintiff's injuries presented a "known or obvious" danger.  Defendant's motion for summary judgment is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 19) is denied.

Dated: February 9, 2015

S/ Julie A. Robinson

_____

[42]*Cf. Smith*, 1999 WL 1423070, at *3 (finding that the plaintiff failed to present evidence, beyond his mere speculation, suggesting that he had actually tripped over a box).

[43]*See id.* at *4 ("[T]o the extent that plaintiff claims defendant failed to warn him of the danger of the boxes stacked next to the Pepsi machine, there is no duty to protect or warn an invitee about dangers readily apparent and observable.").

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE